UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:17-cr-00168-SEB-MJD |
| | ) | |
| CHARLES SKAGGS, JR., | ) | -01 |
| | ) | |
| Defendant. | ) | |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

This matter came before the Court for a bench trial on July 22, 2019 through July 24, 2019. These written findings of fact and conclusions of law augment the oral rulings made at the conclusion of the trial. For the reasons detailed below and previously explicated on the record, the Court finds Defendant Charles Skaggs, Jr. ("Mr. Skaggs") <u>GUILTY</u> of each of the nine counts of sexual exploitation of a child, and attempted sexual exploitation of a child, in violation of Title 18, United States Code, Section 2251(a) (Counts 1 through 9); <u>GUILTY</u> of both counts of possession of child pornography, in violation of Title 18, United States Code, Sections 2252(a)(4)(B) and 2252A(a)(5)(B) (Counts 10 and 11); and <u>GUILTY</u> of one count of concealment of evidence, in violation of Title 18, United States Code, Sections 1519 and 2 (Count 12).

**<u>Background</u>**

On December 19, 2017, Mr. Skaggs was indicted by a federal grand jury sitting in Indianapolis, Indiana, on nine counts of sexual exploitation of a child, and attempted sexual exploitation of a child, in violation of 18 U.S.C. § 2251(a) and (e), two counts of

possession of child pornography, in violation of 18 U.S.C. §§ 2252(a)(4)(B) and 2252A(a)(5)(B), and one count of concealment of evidence, in violation of 18 U.S.C. §§ 1519 and 2. Mr. Skaggs was also indicted on nine counts of committing repeated sex offenses involving children, under Title 18, United States Code, Sections 2251 and 3559(e), based on a prior conviction in Clark County, Indiana, for sexual misconduct with a child. On July 2, 2019, the grand jury returned a Superseding Indictment that included notice of the enhanced penalty (rather than charging such penalty as separate offenses).

On June 27, 2019, while represented by counsel, Mr. Skaggs waived his constitutional right to a jury trial. That same day, the Magistrate Judge held a *Faretta* hearing, following which the Court denied Mr. Skaggs's request to appoint new counsel and granted his request to represent himself.

A bench trial was held in this case on July 22, 2019 through July 24, 2019. The United States appeared by Assistant United States Attorneys MaryAnn Mindrum and Kyle Sawa. Mr. Skaggs appeared *pro se*. Public Defenders Gwendolyn Beitz and Joseph Cleary participated as Mr. Skaggs's standby counsel.

## <u>Findings of Fact</u>

**The Search of Defendant at the Minneapolis-St. Paul International Airport**

In late 2015, Special Agent Ryan Barrett, FBI Indianapolis, received information regarding Mr. Skaggs's alleged involvement in child sex tourism and commenced an investigation into his activities. As a result of the information gathered in SA Barrett's investigation, on December 10, 2106, Mr. Skaggs was searched and interviewed in the

U.S. Customs area of the Minneapolis-St. Paul International Airport ("MSP") during his return trip from Ukraine to his home in Indiana.

Officer Kenneth Duray, Customs and Border Protection, and Special Agent Jared Drengson, HIS-St. Paul, encountered Mr. Skaggs after he was referred to the Baggage Secondary area from the Primary Inspection area. As he approached the Secondary exam counter at the Baggage Secondary area, the agents heard him say, "I'm ready to get fucked" and "This happens to me all the time when I fly to the U.S."

Officer Duray obtained an oral Binding Declaration from Mr. Skaggs regarding the luggage he had in his possession. Mr. Skaggs identified the bags as his and stated that he had packed everything in the bags himself and that he was aware of their contents. Mr. Skaggs also placed a cell phone, some papers, and Ukrainian currency on the counter. When asked whether he had any additional cell phones, electronics, computers, hard drives, thumb drives, or any other computer equipment on his person or in his luggage, Mr. Skaggs responded in the negative and remarked that everything of that sort had been stolen while in Ukraine.

Customs and Border Protection officers searched Mr. Skaggs's luggage and found four thumb drives wrapped in underwear located in a compartment of his backpack. Mr. Skaggs had failed to disclose those items to SA Drengson and Officer Duray when he was asked if he had any thumb drives or storage media in his possession. Those electronic items, as well as a SD card and a cell phone, were taken to a different location in the airport for further inspection.

SA Kevin Lang, HSI-St. Paul, a computer forensics expert, previewed[1] the four thumb drives, including the two thumb drives introduced into evidence as Exhibit 8 (64GB Patriot Memory USB thumb drive) ("64 GB thumb drive") and Exhibit 9 (128GB Patriot Memory USB thumb drive) ("128 GB thumb drive"). He discovered several images on the 64GB thumb drive believed to be child erotica or pornography.[2] SA Lang relayed that information to SA Drengson. Because images of suspected child pornography had been found on one of the thumb drives, all four thumb drives were seized for further analysis. SA Lang bagged the devices and took them to the HIS-St. Paul Forensics Laboratory, located approximately one to two miles from MSP.

Following completion of his interview by SA Drengson and Officer Duray, Mr. Skaggs was escorted to the re-check counter to check in for his flight to Indiana.

**Images on the Thumb Drives**

On December 12, 2016, two days after Mr. Skaggs's entry into the United States, SA Ulrich Palmer-Denig, HIS-St. Paul, a computer forensics expert and SA Lang's lab partner, continued the search of the four thumb drives, as well as other digital media found in Mr. Skaggs's possession, at the HIS-St. Paul Forensics Laboratory. SA Palmer-

---

[1] As explained during testimony, forensic previews are quick examinations of the media itself, not an image copy. SA Lang's duties include performing previews for on-site examinations, including at the customs area of MSP.

[2] When SA Lang inserted the 64GB thumb drive into his laptop, he believed his laptop was in write-protected mode to prevent his laptop from making any changes to the media, but it was not. When he realized this mistake, he stopped the search of the thumb drive and enabled the write blocker on his laptop. The 64GB thumb drive had been plugged into his laptop for approximately twenty minutes when he realized his mistake. As a result of this error, approximately 2400 files out of several thousand had their "last access date" changed to December 10, 2017, the date SA Lang conducted the preview. No other aspect of the thumb drive, including metadata, contents of the files, etc., was altered.

Denig created forensic images of all the devices and worked from those images.[3]  Upon examination, SA Palmer-Denig located suspected child pornography and erotica on Exhibits 8 and 9, which included videos and screen captures of what appeared to be a nude teenage female using the toilet and shower.  SA Palmer-Denig identified the individual in the images as a relative of Mr. Skaggs, who was a minor child known to law enforcement and referred to as "Child 1" in the Superseding Indictment.  SA Palmer-Denig made this identification based on Child 1's school identification card and a rental agreement that contained her date of birth and Mr. Skaggs's name.  Once the suspected child pornography was identified, he backed up the images found on Exhibits 8 and 9 to a hard drive (Exh. 12) and turned it over to HIS.

SA Barrett received the hard drive containing those forensic images as well as the 64GB and 128GB thumb drives themselves and obtained a search warrant in the Southern District of Indiana to search such items for, among other things, evidence of child pornography.  Pursuant to the search warrant, SA Barrett searched the 64GB and 128GB thumb drives and located images and videos of child pornography and child erotica, including those videos and images charged in Counts 1 through 10 of the Superseding Indictment.  Counts 1 through 9 refer to video files of Child 1 (Exhs. 120 (Count 1); 220 (Count 2); 320 (Count 3); 420, 430 (Count 4); 520 (Count 5); 620, 630 (Count 6); 720,

---

[3] SA Palmer-Denig used a write blocker to prevent changes from being made to the digital media.  However, he placed the 64 GB thumb drive into the wrong port on his computer for a few seconds before realizing his error.  He then performed an analysis to determine whether any changes had been made to the digital media.  The access date on one file had been changed, but no other aspect of the data was altered.

730, 740, 750 (Count 7); 820 (Count 8); and 920 (Count 9)), Mr. Skaggs's minor

daughter, depicting her getting in and out of the shower and/or using the toilet.  Count 10

references several of these same video files (Exhs. 320, 420, 430, 520, 620, 630, 720,

740, 750, 820, and 920) as well as two screenshots from the videos (Exhs. 1021 and

1022) stored on the 64GB thumb drive.

In the videos, Child 1 is at times wearing leopard-print pants and, in other portions

of the videos, is completely nude.  The backdrop in each of the videos is a very

distinctive shower curtain depicting an outdoor scene.  In the first two videos, charged in

Counts 1 and 2 (Exhs. 120, 220), the camera is focused on Child 1's exposed torso and

breasts.  *See* Exhs. 122, 227.  Near the beginning of the third video (Exh. 320), a hand is

visible in the frame and appears to be adjusting the camera.  Exh. 322.  After the hand

leaves the frame, the camera's focus is lower than before the hand appeared as Child 1's

genital and pubic areas are visible.  Exh. 327.  In all subsequent videos, to wit, those

charged in Counts 3 through 9 as well as in the videos and screenshots charged in Count

10, the camera is focused on Child 1's exposed genital/pubic areas and her face is visible

only when she bends down or sits on the toilet.  Exhs. 422, 424–425, 432–434, 522–524,

624–626, 632–635, 723, 731–732, 741–743, 751–752, 822–824, 923–926.

SA Barret identified the individual in the video files as Mr. Skaggs's daughter. Mr.

Skaggs's daughter, Child 1, was born on May 21, 2000.  After her parents' divorce, she

and her brother lived with Mr. Skaggs on the weekends in a house on Perkins Street in

Carmel, Indiana, beginning when she was fourteen years old until the age of sixteen.

Prior to her testimony at trial, she was shown by the government images of some of the

videos found on Mr. Skaggs's thumb drives, and she identified herself in those images based on the leopard pants she was wearing and the distinctive shower curtain that was in the frame, which was the shower curtain that hung in the bathroom that she and her brother regularly used in the Perkins Street residence.[4]  She also identified the voices that were audible in one of the videos she was shown as hers and Mr. Skaggs's.  She was called as a witness at trial and testified that the hand that can be seen in the video charged in Count 3 of the Superseding Indictment (Exhs. 320, 322) is not hers.  At trial, Mr. Skaggs admitted that it was his hand depicted in that video and testified that he believes he was checking the time on the alarm clock camera, not adjusting the position or focus of the hidden camera.

The videos and screenshots of Child 1 were found to have been saved on the thumb drives in an organized fashion in a series of user-created embedded folders.  The file structure of the 64GB thumb drive, for example, shows the charged videos and screenshots of Child 1 stored in a folder titled "special video" that is saved within another folder titled "video."  Exhs. 1012–1013.  Because this folder structure is not a default setting of the device, the investigative witnesses explained that the user would have had to have created the "special video" folder and saved the specific videos in that folder.  Likewise, the videos of Child 1 found on the 128GB thumb drive were saved in a "VIDEO" folder located within a folder titled "random 32G folder."  Exh. 1015.

---

[4] Prior to trial, Child 1's brother, Tyler Skaggs ("Tyler"), likewise identified for the government the shower curtain in the videos as being the one that hung in the Perkins Street bathroom he and his sister used when they stayed with their father.  Tyler also identified Child 1 in a screen shot the government had taken from one of the charged videos.  Exhs. 68, 69.

SA Barrett located on the thumb drives other clothed images of Child 1 where the camera was focused on her genital or buttocks area. Exhs. 1062–1066. He also located images and videos of child pornography and child erotica not involving Child 1, some of which were charged in Count 10, as well as evidence pertaining to the device user's sexual interest in children, such as fragments of saved web pages and journal articles about pedophilia saved onto the thumb drives. Exhs. 1031–1037; 1041–1044; 1051–1055. The images charged in Count 10 were saved on the 128GB thumb drive in an organized file structure in a folder titled "SuperTeenz_files" that was saved within a folder titled "girls," which was, in turn, saved in a folder titled "photos." Exh. 1016.

SA Barrett determined that the thumb drives also contained numerous images, files, documents, and other personal information associated with Mr. Skaggs, such as tax returns, family photographs, and photographs and documentation of his travels. Exhs. 1081–1082.

**January 9, 2017 Search of Defendant's Residence and Interview of Defendant**

On January 9, 2017, law enforcement officials conducted a search of Mr. Skaggs's residence at 628 Cherry Street, Noblesville, Indiana, pursuant to a search warrant. When officers arrived to conduct the search of his residence, Mr. Skaggs stated that he had been "kind of waiting" for them, presumably since December 10, 2016, when his thumb drives were seized at MSP. In their search of 628 Cherry Street, law enforcement officers found evidence tying Mr. Skaggs to the residence and one bedroom in particular, including credit cards, handwritten notes, mail, and Skaggs's driver's license which was found in a desk drawer in the bedroom. Empty boxes for an alarm clock camera device and a key-

fob camera device were also found in the desk in that bedroom. These items were admitted into evidence at trial. Exhs. 15–34.

That same day, on January 9, 2017, after being advised of his *Miranda* rights, Mr. Skaggs was interviewed for approximately three hours at his residence by FBI SA Barrett and SA Mike Johnson from the Department of Homeland Security. Mr. Skaggs agreed to be interviewed again later that day by FBI SA William Kline at the FBI offices in Indianapolis, Indiana. During those interviews, Mr. Skaggs admitted secretly filming Child 1 while she was nude in the bathroom and shower as well as collecting and possessing other child pornography files. His admission to law enforcement that he knew he had child pornography on his electronic devices came in the context of the discussions regarding the thumb drives seized at MSP. At trial, Mr. Skaggs provided similar admissions regarding his knowledge that the thumb drives contained child pornography, stating that, given his self-admitted proclivities and behaviors, he could not say he was unaware of the likelihood that they contained illegal content. Exhs. 36–37.

During the January 9, 2017 interview, Mr. Skaggs admitted that he had purchased video equipment (an alarm clock and a key-fob, both equipped with hidden cameras) approximately two years earlier and had placed a hidden camera in the bathroom of his residence at the time at the Perkins Street address. The cameras operated on motion sensors, meaning they would automatically begin recording when someone entered the bathroom and would stop recording when there was no longer any movement. Mr. Skaggs estimated during his interview that he had made seven or eight videos of his daughter getting in and out of the shower and confirmed that at the time of the interview

she was sixteen years old, making her fourteen years old at the time he took the videos. Exhs. 36–37.

He informed SA Barret and SA Johnson that his "target age" and "sexual preference" with respect to young girls was "probably somewhere in the ballpark of 14." Exh. 36–37.  Mr. Skaggs explained, however, that he no longer had a sexual interest, preferring only pictures of people that he thought were "pretty" and "cute."  *Id.*  At trial, he reiterated his lack of sexual interest, testifying that he had placed the hidden camera in the bathroom out of curiosity and because he was a voyeur, not to satisfy any sexual desire or for the purpose of creating child pornography.

Also, during the January 9, 2017 interview, Mr. Skaggs admitted taking pictures of other girls whom he encountered in public places, such as the photograph of a minor girl's clothed buttocks in Wal-Mart, and nude videos photographed in the bathroom of his home targeting two nineteen-year-old Thai exchange students who were living with him at the time.  He admitted that he had previously been convicted of sexual misconduct with a minor for having sexual intercourse with the family's fifteen-year-old babysitter when he was twenty-nine years old.  Exhs. 36–37.

The substance of the January 9, 2017 interviews came into evidence at trial through the testimony of SA Barrett and SA Kline.

Mr. Skaggs was ultimately arrested on January 9, 2017 and was detained pending trial.

**The Seagate Hard Drive**

On May 17, 2017, Mr. Skaggs telephoned his son, Tyler Skaggs ("Tyler"), from the Henderson County Detention Center ("HCDC") to request that he visit him in jail in person. Mr. Skaggs mentioned that he wanted Tyler to "do something" for him but could not discuss what that was over the telephone because the call was being recorded. Tyler agreed to come to the jail to visit Mr. Skaggs the following Saturday. Exhs. 46–47.

At the jail, inmates are placed in a separate room from their visitors and must therefore communicate with their visitors through a glass divider over a telephone. During Tyler's visit to HCDC, Mr. Skaggs held up a handwritten note against the glass for Tyler to read. Whenever a jail guard walked by, Mr. Skaggs removed the note so it could not be seen and returned it to the glass thereafter until Tyler was able to read its contents. Exhs. 49, 51.

The note, later seized from Mr. Skaggs's cell and identified at trial as Exhibit 52, instructed Tyler to verify that a hard drive "still exists in [the] laundry room," specifically "in the ceiling tiles above those stacked bricks," and, once its location was confirmed, to leave it there unless Tyler moved from the residence at some future time. The note further instructed that when Mr. Skaggs discussed the hard drive with Tyler in the future, he was to refer to it as "'the other car' at Oleg's place." Exh. 52.

After this visit, Tyler did as his father directed in checking the area above the ceiling tiles in the shared laundry room of the apartment complex on Cherry Street where Mr. Skaggs had resided with his son. Tyler discovered the hidden hard drive, which he left in its hiding spot. Tyler testified to all these facts, adding that he had not known

previously that the hard drive was there and that he himself had not put it there.  In a subsequent phone call, Tyler spoke with Mr. Skaggs confirming his discovery of the hard drive.  Mr. Skaggs asked Tyler about the "other car," to which Tyler responded, "the other car at Oleg's."  Exhs. 46, 48.  Tyler said to Mr. Skaggs that it was "still there," to which Mr. Skaggs replied, "Really? … I'm impressed."  Exhs. 46, 48.

HCDC policy requires that jail visits between inmates and outsiders be recorded on audio and video; the videos are retained for six months and the audio for one year.  After jail officials reviewed the video of Tyler's visit and observed Mr. Skaggs placing a piece of paper up to the window for Tyler to read, a search was conducted of Mr. Skaggs's cell where a letter was uncovered from Mr. Skaggs's property bag that appeared to be the paper he had held up in the window for Tyler to read.  Exh. 52.  Tyler confirmed at trial that it was the note his father had displayed through the jail window.  Law enforcement then searched and located a Seagate Backup Plus Portable Drive, Model SRD00F1 ("the Seagate hard drive") in the exact location described in Mr. Skaggs's note, which was admitted into evidence as Exhibit 60.

Indiana State Police Sergeant Jennifer Barnes, a computer forensic specialist in the ISP's Cyber Crime Unit, analyzed the Seagate hard drive, which revealed, among other things, many of the same videos of child pornography and child erotica located during the search of Mr. Skaggs's 64GB and 128GB thumb drives, including some of the videos of Child 1 charged in Counts 3, 4, and 7, as well as the same images of nude minors charged in Count 10 of the Superseding Indictment.  The images found on the Seagate hard drive

are charged in Count 11 of the Superseding Indictment (Exhibits 320, 420, 430, 720, 750 and 1031–1037).

As with the internal file structure of the thumb drives, the images on the Seagate hard drive were stored in a user-created folder system. Some of the videos of Child 1, for example, were stored on the Seagate hard drive in a folder titled "HMMM," which was stored within several other layers of subfolders. Exh. 1116. The other videos and images were saved in a similar fashion, to wit, in folders within other folders. Exhs. 1113–1115, 1117. Sgt. Barnes testified that based on her expertise she considers the folder structure on the Seagate hard drive to be highly organized, reflective of considerable effort by the user to sort and organize sets of images.

Sgt. Barnes also found Internet artifact evidence on the Seagate hard drive evincing user searches on websites associated with child pornography using search terms like "Lolita," "pedo," "incest," "preteen," and "underage." *See* Exh. 1160 (summary chart of findings).

Sgt. Barnes testified that she had determined that, other than her own computer,[5] the Seagate hard drive had been plugged into only one other electronic device, a Windows computer. She was unable to match the identifier number of that Windows

---

[5] Sgt. Barnes utilizes write blocker software on her computer to prevent her computer from writing on the devices she analyzes. However, when she initially plugged the Seagate hard drive into her computer in order to make a forensic image of it, she failed to initiate the write blocking software. Sgt. Barnes realized her mistake after a few seconds and immediately removed the Seagate hard drive. The result of this error was that her computer had automatically created a recycle bin folder on the Seagate hard drive. Other than this change, no other alterations were made to the Seagate hard drive.

computer to any of the devices seized from Mr. Skaggs's residence, but found numerous photographs of Mr. Skaggs saved on the hard drive as well as various identifying personal documents and financial records. Exhs. 1172–1182. She was also able to determine that December 11, 2016—the day after Mr. Skaggs's thumb drives were seized at MSP—was the first time the Seagate hard drive had been plugged into any Windows machine and that all the files on the hard drive had been uploaded to that device over the two-day span between December 11, 2016 and December 13, 2016.

Mr. Skaggs admitted at trial that he had purchased the Seagate hard drive the day after he returned to Indiana from Ukraine and that, over the next few days, he backed up the files from his home computer onto the hard drive. He testified that he had had a number of electronic devices stolen in Ukraine, and, when he returned to Indiana, he discovered his home computer was failing. He explained that because these devices contained his "whole digital life" and over thirty years of his "digital history," such as photographs of his friends and family as well as his travels, personal business records, and personal financial information, he wanted to make sure they were preserved. He also admitted hiding the Seagate hard drive in the common laundry room of his apartment complex because he believed it was likely that law enforcement would arrive at some point to search his residence in connection with the seized thumb drives and he did not want to risk his computer being seized and indefinitely held or potentially misplaced by law enforcement during their investigation, causing him to lose his personal historical records. At trial, Mr. Skaggs denied knowing there was illegal material stored on the Seagate hard drive.

The evidence presented at trial by the government was detailed, extensive, comprehensive, and persuasive. In contrast, the Defendant's testimony was inconsistent, erratic, evasive, and contrived, and his cross-examination of the government's witnesses ineffectual.

## Conclusion of Law

**I.** **Sexual Exploitation of a Child (Counts 1 through 9)**

Defendant was charged with nine counts of sexual exploitation of a child and attempted sexual exploitation of a child, in violation of Title 18, United States Code, Section 2251(a) and (e). The government was required to prove the following elements beyond a reasonable doubt to convict Defendant on these charges:

(1) At the time, Child 1 was under the age of eighteen years; and

(2) The Defendant, for the purpose of producing a visual depiction of such conduct, used Child 1 to take part in sexually explicit conduct; and

(3) The visual depiction was produced using materials that had been mailed, shipped, transported across state lines or in foreign commerce or the visual depiction was mailed or actually transported across state lines or in foreign commerce.

Pattern Crim. Jury Inst. 7th Cir. 18 U.S.C. § 2251(a) Sexual Exploitation of a Child – Elements (2012) (plus 2015–2017 and 2018 changes).

### A. At the Time of the Offense, Child 1 Was Under the Age of Eighteen Years

The Court finds beyond a reasonable doubt that Child 1 was under eighteen years old at the time the visual depictions charged in Counts 1 through 9 were produced. Child 1 and her brother both testified that her birthday is May 21, 2000. Child 1 testified that

she lived with her father, Defendant Skaggs, in the house on Perkins Street, Carmel, Indiana—the location where the charged videos were filmed—when she was between the ages of fourteen to sixteen years old.

In his January 9, 2017 interview with law enforcement, Mr. Skaggs admitted that Child 1 was then sixteen years old, and that she was approximately fourteen years old when the charged videos were created. Exhs. 36–37. Additionally, SA Barnett testified that he had reviewed all the charged videos prior to the January 9, 2017 interview with Mr. Skaggs and that, with a May 21, 2000 birthday, Child 1 would have been under the age of sixteen at the time those videos were filmed. This element was thus proven by the government's evidence.

### B. The Defendant Used Child 1 to Engage in Sexually Explicit Conduct for the Purpose of Creating a Visual Depiction of Such Conduct

The second element the government was required to prove was that Mr. Skaggs, for purposes of producing a visual depiction of such conduct, used Child 1 to engage in sexually explicit conduct. The term "visual depiction," as defined in 18 U.S.C. § 2256(5), includes undeveloped film and videotape, data stored on computer disc or other electronic means which is capable of conversion into a visual image, and data which is capable of conversion into a visual image that has been transmitted by any means, whether or not stored in a permanent format. The term "sexually explicit conduct," 18 U.S.C. § 2256(2)(A)(i-v), is defined as actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons

of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic areas of any person.

As to this element, Mr. Skaggs challenged the term "used," as charged in the Superseding Indictment, arguing that the term must be interpreted to include some active or coercive component, or, in other words, to require a causal, interactive relationship between himself and the minor in engaging her in sexually explicit conduct. Mr. Skaggs argued that, because he placed the hidden camera in the bathroom used by Child 1 without any explicit direction to her or enlistment or proactive engagement, he was acting merely as a voyeur, and, as such, he could not be found guilty of having "used" Child 1 in the manner required by the statute.

While we have not found Seventh Circuit authority directly addressing this issue, a number of other district and appellate courts have addressed and rejected this argument. Most recently, in *United States v. Theis*, 853 F.3d 1178 (10th Cir. 2017), the Tenth Circuit held that § 2251(a) does not require a causal relationship between the defendant and the minor's sexually explicit conduct, observing that "nearly every circuit to address this issue has recognized that the 'uses' element 'is met when a defendant intentionally films or photographs a minor's sexually explicit conduct.'" *Id.* at 1182 (collecting cases from the Second, Third, Sixth, and Eighth Circuits). In *Theis*, the defendant raised the same argument advanced by Mr. Skaggs here, to wit, that, because the extent of his conduct was passive, limited to "secretly videotap[ing] the unaware minor while she performed activities over which he had no control or influence," such conduct did not satisfy the "uses" element of § 2251(a). *Id.* at 1181. The Tenth Circuit rejected this

argument, relying on the plain language of the statute and concluding that "neither the statutory text nor persuasive authority from other circuits supports … [the] argument that the 'uses' element of § 2251(a) requires a causal relationship between a defendant's actions and the minor's sexually explicit conduct." *Id.* at 1182.

When construing a statute, we "give effect, if possible, to every clause and word…." *Duncan v. Walker*, 533 U.S. 167, 174 (2001) (internal quotation marks omitted). Here, the word "use" is included in § 2251(a) alongside the terms "employ," "persuade," "induce," "entice," and "coerce," each of which "reach[es] various types of external pressure that a defendant might apply on a minor to get him or her to engage in sexually explicit conduct." *Ortiz-Graulau v. United States*, 756 F.3d 12, 19 (1st Cir. 2014). "Inclusion of the term 'use' in the statute permits the conviction of a defendant who was actively and directly involved in producing a sexually explicit depiction of a minor even in the absence of a complaining witness or even without being able to identify the specific minor." *Id.* In other words, "a perpetrator can 'use' a minor to engage in sexually explicit conduct without the minor's conscious or active participation." *United States v. Finley*, 726 F.3d 483, 495 (3d Cir. 2013). Such an interpretation of the word "use" is in line with Congress's intent to provide a "broad ban on the production of child pornography … aimed to prohibit the varied means by which an individual might actively create it." *United States v. Poulin*, 631 F.3d 17, 23 (1st Cir. 2011).

Having found no legal authority to support the conclusion that § 2251(a) requires any sort of causal relationship between the defendant and the minor's sexually explicit

conduct, we reject Mr. Skaggs's definition of "used" under the statute. While we agree that there is an active component to "use," as used in § 2251(a), we find, in line with other courts to have addressed the issue, "that [active] component is fully satisfied for the purposes of the child pornography statute if a child is photographed in order to create pornography." *United States v. Sirois*, 87 F.3d 34, 41 (2d Cir. 1996). For the reasons detailed below, we hold that the government has proved beyond a reasonable doubt that Mr. Skaggs used Child 1 in a way that was violative of 18 U.S.C. § 2251(a).

Mr. Skaggs admitted both during his January 9, 2017 interview with law enforcement and at trial that he intentionally placed the alarm clock with the hidden camera activated by motion sensor in the bathroom of his home that was used by his minor son and daughter, clearly intending to capture and produce a visual depiction of his children's activity in the bathroom. The fact that he retained only the videos of his daughter discloses his intent to create visual depictions of her, in particular. The evidence further establishes that the stationary hidden camera was focused on the bathroom's shower area. In the videos charged in Counts 1 and 2 of the Superseding Indictment, the camera captures photos of Child 1's torso and chest area when she enters and exits the shower. Exhs. 120, 122, 220, 227. In the video charged in Count 3, which was filmed after the videos charged in Counts 1 and 2, a hand appears to the left of the view captured in the frame, which Mr. Skaggs identified as his hand. Exhs. 320, 322. After the hand is no longer visible in the frame, the remaining videos, to wit, those charged in Counts 3 through 9, focus on Child 1's genital and pubic areas. This clearly

evidences the intention to position the camera in a deliberate way to capture those specific areas.

The videos charged in Counts 3 through 9 (Exhs. 320 (Count 3); 420, 430 (Count 4), 520 (Count 5); 620, 630 (Count 6); 720, 730, 740, 750 (Count 7); 820 (Count 8); and 920 (Count 9)) each depict sexually explicit conduct, specifically, the lascivious exhibition of the genitals or pubic area. Although the statute does not specifically define what constitutes a lascivious display of the genitals or pubic area, "[g]enerally speaking, … a lascivious display is one that calls attention to the genitals or pubic area for the purpose of eliciting a sexual response in the viewer." *United States v. Russell*, 662 F.3d 831, 843 (7th Cir. 2011). "[M]ore than nudity is required to render [a video] lascivious; rather, 'the focus of the image must be on the genitals or the image must be otherwise sexually suggestive.'" *Id.* (quoting *United States v. Griesbach*, 540 F.3d 654, 656 (7th Cir. 2008)). Mr. Skaggs argued that the government failed to prove that the videos of Child 1 depicted anything beyond mere nudity. For the following reasons, we reject this contention.

In applying the definition of "lascivious exhibition of the genitals or pubic area," courts typically consider several factors. These factors include, but are not limited to whether the focal point of the picture is the minor's genitalia or pubic area; whether the visual setting or pose is sexually suggestive, i.e., in a place or a pose generally associated with sexual activity; whether the minor's pose is unnatural or whether the minor is dressed in inappropriate attire given his or her age; whether the minor is fully or partially nude; whether sexual coyness or willingness to engage in sexual activity is suggested;

and whether the depiction is intended or designed to elicit a sexual response in the viewer. *See id.* (citing *United States v. Dost*, 636 F. Supp. 828, 832 (S.D. Cal. 1986)).

In the portions of videos charged in Counts 3 through 9 in which Child 1 is entering and exiting the shower, she is partially or entirely nude. *See, e.g.*, Exhs. 324, 326–327, 422, 424–425, 431–434, 522–524, 624–626, 634–635, 723, 732, 741–743, 751–752, 822–824, 924–925. When Child 1 appears in the frame, her nude genital and pubic areas are visible (*see id.*), which "support[s] the conclusion that there was an 'exhibition' of the pubic area." *United States v. Miller*, 829 F.3d 519, 525 (7th Cir. 2016).

The evidence adduced at trial also supports a finding of lasciviousness. Child 1's exposed genital and pubic areas are the focus of the portions of the videos in which she is in the frame and entering and exiting the shower. *See, e.g.*, Exhs. 324, 326–327, 422, 424–425, 431–434, 522–524, 624–626, 634–635, 723, 732, 741–743, 752, 822–824, 924–925. The visual setting of the videos, that is, the shower, is in these shots sexually suggestive. *See United States v. Schuster*, 706 F.3d 800, 808 (7th Cir. 2013) (observing that ("[S]howers and bathtubs are frequent hosts to fantasy sexual encounters as portrayed on television and in film.") (internal quotation marks and citation omitted).

Mr. Skaggs's intent and motive in filming Child 1 is also relevant to the lasciviousness determination, particularly because, though the videos are focused on the minor's genital and pubic areas, Mr. Skaggs has expressly disclaimed any intent to create sexually suggestive images. *Russell*, 662 F.3d at 843–44; *Miller*, 829 F.3d at 526 ("Whether the image 'arouses sexual desire' is informed by the intent of the person creating the image."). Based on the plethora of evidence introduced at trial regarding Mr.

Skaggs's admitted proclivities, particularly his admission that 14-year-olds in particular are a targeted area of his primary interest, coupled with the fact that he surreptitiously recorded the videos, retaining only the videos in which Child 1 appeared, establish that he was more than simply a voyeur as he contends; instead he intentionally created sexually suggestive videos that were meant to elicit a sexual response in the viewer. *See Miller*, 829 F.3d at 526 ("The steps [the defendant] took to surreptitiously create the images undermine an inference that there was a legitimate purpose to his video production. … Instead, the reasonable inference drawn by the fact finder is that he was creating the videos because they sexually excite him.").

This conclusion is buttressed by evidence that Mr. Skaggs also produced screen shots from the videos highlighting prurient aspects of the footage, including a close-up depiction of Child 1's buttocks and genitals as she bent over (Exh. 1021) and one specific pose that evokes sexual coyness (Exh. 1022). This demonstrates in a convincing way his own sexual interest and also informs our assessment that the videos he created reflected not mere nudity but a lascivious display of the genitals. Finally, the fact that Mr. Skaggs stored the charged videos on the thumb drives in a nested electronic folder that he named "special video" provides additional evidence that his production of these videos had neither a legitimate nor an innocent purpose. Exhs. 1012–1013. This evidence, considered as a whole, supports a factual and legal finding of lasciviousness as to the videos charged in Counts 3 through 9.

Mr. Skaggs is also charged in Counts 1 and 2 with attempted sexual exploitation of a child. The videos related to these charges (Exhibits 120 and 220) do not depict

sexually explicit conduct because the camera is focused above Child 1's waist, thus capturing only her bare torso and breasts, not her genital or pubic areas. *See* Exhs. 122, 223, 226–227. Considering these videos in the context of Mr. Skaggs's overall conduct, however, we find that they reflect his preliminary, but failed, efforts to capture the sexually explicit conduct of a minor, as evidenced by his hand appearing in the frame in the early portion of the video charged in Count 3 (Exh. 322), after which the camera's focus was moved lower to capture Child 1's genital and pubic areas. The subsequent videos capturing Child 1 by Mr. Skaggs are focused on her genital and pubic areas.

Thus, we hold that the evidence proves beyond a reasonable doubt each of the elements of sexual exploitation and attempted sexual exploitation of Child 1 by the creation of visual depictions that include the lascivious exhibition of her genitals or pubic area as charged in Counts 1 through 9 of the Superseding Indictment.

### C. The Visual Depictions Were Mailed or Shipped in Interstate Commerce or Produced Using Materials That Had Been Mailed, Shipped or Transported in a Manner Affecting Interstate Commerce

Mr. Skaggs and the government stipulated to the fact that each of the electronic devices on which the charged videos were found, to wit, the 64GB Patriot Memory USB thumb drive, the 128GB Patriot Memory USB thumb drive, and the Seagate Backup Plus Portable Drive, Model SRD00F1, was mailed or shipped in interstate or foreign commerce, transported in interstate or foreign commerce, or produced using materials that had been mailed, shipped, or transported in a manner affecting interstate or foreign commerce. Exh. 71. Accordingly, we find that the third and final element of Counts 1 through 9 has been proved beyond a reasonable doubt.

**II.  Possession of Child Pornography (Counts 10 and 11)**

Defendant was also charged with two counts of Possession of Child Pornography, in violation of Title 18, United States Code, Sections 2252(a)(4)(B) and 2252A(a)(5)(B). To convict Defendant on these charges, the government was required to prove the following elements:

(1) The Defendant knowingly possessed the material identified in the Superseding Indictment; and

(2) The material identified in the Superseding Indictment contained child pornography/visual depiction of a minor engaging in sexually explicit conduct; and

(3) The Defendant knew both that the material depicted one or more persons under the age of eighteen years and that the minor(s) were engaged in sexually explicit conduct; and

(4) The material identified in the Superseding Indictment had been mailed, or shipped or transported using a means or facility of interstate or foreign commerce or shipped or transported in or affecting interstate or foreign commerce by any means, including by computer, or produced using materials that had been mailed, or using materials that have been shipped or transported in or affecting interstate or foreign commerce by any means, including by computer.

Pattern Crim. Jury Inst. 7th Cir. 18 U.S.C. 2252A(a)(5)(B) Possession of or Access With Intent to view Child Pornography in Interstate Commerce – Elements (2012) (plus 2015–2017 and 2018 changes); 18 U.S.C. § 2252(a)(4)(B).

## A.  The Defendant Knowingly Possessed the Material Identified in the Superseding Indictment

The Court concludes that the government has proved beyond a reasonable doubt that Mr. Skaggs knowingly possessed the material identified in the Superseding Indictment.  The material identified in the Superseding Indictment was located on various forms of digital media owned by Defendant, to wit, the 64GB Patriot Memory USB thumb drive (Exh. 8), the 128GB Patriot Memory USB thumb drive (Exh. 9), and the Seagate Backup Plus Portable Drive, Model SRD00F1 (Exh. 60).

The two thumb drives were seized from Mr. Skaggs's luggage at the Minneapolis airport.  SA Duray testified that Mr. Skaggs orally made a "binding declaration" that the luggage belonged to him, that he had packed the bags himself, and that he knew the contents.  The material was stored on the thumb drives in a highly organized fashion, in many instances in a series of nested folders suggestive of careful management of the material.  Exhs. 1011–1016.  The computer forensic experts testified that, in their training and experience, the folder structure in which the images were saved was not a default storage format of the devices, but rather that the folders were user-created and user-named.  Thus, the manner in which the material was stored on the thumb drives evinces knowledge of the content as the evidence establishes that the images were deliberately sorted and organized on the devices by the user.  During his January 9, 2017 interview with law enforcement, Mr. Skaggs admitted that there was child pornography stored on the thumb drives.  At trial, Mr. Skaggs testified inconsistently, saying at one point he was not sure precisely what was in his bag even though the thumb drives appeared to have

been secreted in underwear, but later he confirmed that, given his predilections and habits, it was logical to assume that he was aware on some level that the thumb drives contained illegal content.

With regard to the Seagate hard drive, Mr. Skaggs testified that he had purchased the hard drive the day after he returned from the Minneapolis airport in order to back up his failing desktop computer. The computer, he said, contained his "digital life" covering the past thirty-year period. There is overwhelming evidence, gleamed primarily from Mr. Skaggs's own statements and admissions, that he fully knew a significant portion of his "digital life" consisted of child pornography which he himself had downloaded, including the materials specified in the Superseding Indictment. Moreover, as with the thumb drives, the file structure on the Seagate hard drive revealed a practice of sorting and organizing and retaining material in a highly organized fashion in nested folders, evidence strongly corroborative of knowledge. Exhs. 1111, 1113–1117. Accordingly, we hold that this element has been proven.

**B. The Material Identified in the Superseding Indictment Contained Child Pornography or Visual Depiction of a Minor Engaging in Sexually Explicit Material**

We also find beyond a reasonable doubt that the material identified in the Superseding Indictment contained child pornography or the visual depiction of a minor engaged in sexually explicit material. With regard to the videos and video screenshots depicting Child 1 in the bathroom (Exhibits 320, 420, 430, 520, 620, 630, 720, 740, 750, 820, 920, 1021, and 1022), for the same reasons detailed above we find, that Child 1 was

a minor at the time the videos and images were created and that they each depicted the lascivious exhibition of the genital or pubic area.

As to the charged material that does not involve Child 1 (Exhs. 1031–1037), it is clear from viewing the images that each image includes at least one person under the age of eighteen, some much younger. Further, we find that each of those images clearly depicts one or more minors engaged either in sexual intercourse (Exhs. 1031, 1032, 1035, and 1036) or the lascivious exhibition of the genital or pubic area (Exhs. 1033, 1034, and 1037). We base our finding as to lasciviousness regarding Exhibits 1033 and 1034 on the setting in which the photographs were taken, the minors' sexually suggestive poses, and the fact that the minors depicted are scantily clad in inappropriate attire for their age with their genital areas exposed. Our finding of lasciviousness as to Exhibit 1037 is based on the targeted area of the photograph, to wit, an extreme close-up of a very young minor's exposed genital area (Exh. 1037). Accordingly, we conclude that the evidence established that the charged material constitutes child pornography.

### C. The Defendant Knew That the Material Depicted One or More Persons Under the Age of Eighteen and That the Minors Were Engaged in Sexually Explicit Conduct

The Court also holds beyond a reasonable doubt that Mr. Skaggs knew both that the material on the 64GB and 128GB thumb drives (Count 10) and the Seagate hard drive (Count 11) depicted one or more persons under the age of eighteen and that those minors were engaged in sexually explicit conduct. There is overwhelming evidence in the record regarding Mr. Skaggs's self-admitted proclivities and addiction to child pornography, including his admission at trial that he is a "hoarder" of such material. Thus, we can and

do conclude that this was the type of material which he routinely searched and specifically sought out, or, in the case of the images of his daughter, created for himself.

Mr. Skaggs admitted during his January 9, 2017 interview with law enforcement that he knew there was child pornography on the thumb drives. He testified similarly at trial. The evidence established that images of Child 1 were saved in a nested folder on the thumb drive entitled "special video," and that other images were all saved in a nested folder entitled "SuperTeenz_files." Exhs. 1012–1013, 1015–1016. These folder structures and file names evince Mr. Skaggs's knowledge of the illicit content of those particular images. The fact the thumb drives were found wrapped in his underwear in an apparent attempt to conceal their presence at MSP is further evidence that he knew the devices contained illegal material, namely, child pornography.

There is also significant evidence that Mr. Skaggs knew the Seagate hard drive contained child pornography. He testified that he purchased the hard drive in order to backup his failing home computer because he wanted his "whole digital life" to be preserved on a single device. He admitted that he made the purchase of the hard drive for this purpose within one day following his return from his foreign travels via MSP, where his thumb drives had been seized by law enforcement on grounds that they contained suspected child pornography. Mr. Skaggs testified that he did not believe there was illegal content on the hard drive because he thought he was backing up only the items that were relevant in preserving his "digital history," such as photographs of his travels and of his friends and family. We found that testimony to be incredible.

It is true that the hard drive did contain some legitimate (i.e., non-pornographic) material, including personal photographs, business records, and personal financial information, such as tax returns and bankruptcy filings. Exhs. 1172–1182. However, as noted above, we do not find Mr. Skaggs's testimony that he believed the hard drive contained only innocuous material credible, given his own admissions regarding his online habits and addiction to downloading and hoarding child pornography on his electronic devices, the timing of the purchase of the hard drive, and his testimony that he frequently backed up his electronic devices (at least some of which he admitted he knew contained child pornography) to each other and to his computer. The folder structure used on the hard drive, as with the thumb drives, demonstrates his deliberate sorting and organizing of the images. *See* Exh. 1111, 1113–1117. These facts clearly evince Mr. Skaggs's knowledge that the hard drive contained child pornography and his intention to preserve it.

Our conclusion is buttressed by the evidence regarding Mr. Skaggs's extensive efforts to conceal the hard drive from law enforcement. He testified that he secretly placed the hard drive in the ceiling of the laundry room in the common area of his apartment complex to hide it in the event that law enforcement searched his residence and would likely otherwise have found it. After his arrest, Mr. Skaggs went to great lengths to keep the hard drive concealed, referencing it in his conversations with his son only by code name and refusing to discuss it over the jail telephone because he knew his conversations were being recorded. His instructions to his son directing him to visit him in jail because he needed something done that could not be discussed over the telephone

corroborates his clandestine purposes. Exhs. 46–47. When his son visited Mr. Skaggs at the jail, Skaggs communicated with him via a handwritten note setting out instructions regarding the location of the hard drive. Mr. Skaggs was viewed in the jail's video surveillance footage displaying the note by holding it up to the glass for his son to read, thereafter quickly removing it each time a guard passed within view. The note and these procedures were both testified to by Mr. Skaggs's son as well as by law enforcement agents. Mr. Skaggs, who had explained where the hard drive was hidden, instructed his son to check to see if it was still in that location, and, if so, he was to leave it undisturbed unless he moved from that apartment sometime in the future. Mr. Skaggs informed his son that the next time he discussed the hard drive, he would refer to it as "'the other car' at Oleg's place." Exh. 52. No surprise, the next time Mr. Skaggs spoke with his son, they used this code, as revealed in the recorded phone conversation. Exhs. 46, 48.

This evidence, including the timing of the purchase of the hard drive, Mr. Skaggs's self-admitted online viewing habits and child pornography addiction as well as the fact that he took elaborate precautions involving extreme lengths to conceal the hard drive, all prove that Mr. Skaggs well knew that child pornography was stored on the hard drive.

Thus, we hold that the government proved this element of Counts 10 and 11 beyond a reasonable doubt.

**D. The Material Identified in the Superseding Indictment Was Mailed or Shipped in Interstate Commerce, Transported in Interstate Commerce, or Produced Using Materials That Have Been Mailed, Shipped, or Transported in Interstate Commerce**

As noted above, Mr. Skaggs and the government both stipulated that the electronic devices on which the charged videos and images were found, to wit, the 64GB Patriot Memory USB thumb drive (Exhibit 8), the 128GB Patriot Memory USB thumb drive (Exhibit 9), and the Seagate Backup Plus Portable Drive, Model SRD00F1 (Exhibit 60), each was mailed or shipped in interstate or foreign commerce, transported in interstate or foreign commerce, or produced using materials that had been mailed, shipped, or transported in a manner affecting interstate or foreign commerce. Exh. 71. Accordingly, the fourth and final element of Counts 10 and 11 has also been proved beyond a reasonable doubt.

## III.    Concealment of Evidence (Count 12)

Finally, Mr. Skaggs was charged with one count of Concealment of Evidence, in violation of Title 18, United States Code, Sections 1519 and 2. To convict Defendant on this charge, the government was required to prove the following elements:

(1) That the Defendant knowingly concealed or covered up a tangible object; to wit, a 2-terabyte Seagate hard drive (Exhibit 60); and

(2) That the Defendant acted with intent to impede, obstruct, or influence the investigation in relation to a matter; and

(3) That the matter was within the jurisdiction of the Federal Bureau of Investigation, which is a department or agency of the United States.

*See* 18 U.S.C. § 1519.

### A.  The Defendant Knowingly Concealed or Covered Up a Tangible Object

Mr. Skaggs admitted to the possession of the Seagate hard drive, a tangible object, testifying that he placed it in the ceiling of the laundry room in the common area of his apartment complex to hide it from law enforcement. As previously discussed, there is overwhelming evidence of the lengths Mr. Skaggs went to conceal the hard drive, including calling it by a code name, refusing to discuss it verbally over the telephone because his conversations were being recorded, and communicating with his son about the hard drive via a handwritten note so that their conversation would not be overheard as they discussed its existence or whereabouts. Accordingly, we hold that this element of Count 12 has been satisfied beyond a reasonable doubt.

### B. The Defendant Acted With Intent to Impede, Obstruct, or Influence the Investigation

The government also was required to prove beyond a reasonable doubt that, in hiding the hard drive, Mr. Skaggs acted with the intent to impede, obstruct, or influence the FBI's investigation. There was no difficulty based on the evidence in reaching this conclusion. The hard drive was purchased the day after Mr. Skaggs's thumb drives had been seized by law enforcement because they contained suspected child pornography. Thus, Mr. Skaggs was clearly aware that a law enforcement investigation was underway at the time he utilized the hard drive to back up files from his failing home computer. The evidence also establishes that the home computer was the only device in his residence that contained child pornography. He did not use the hard drive to back up any other electronic device in his home that did not contain illegal content.

The evidence also establishes that Mr. Skaggs had knowledge that the Seagate hard drive, which he knew was the subject of the FBI investigation, contained child pornography. Mr. Skaggs testified that he hid the hard drive because he feared that law enforcement would soon arrive to conduct a search of his residence in connection with their investigation into the illegal content stored on the seized thumb drives. When law enforcement did eventually arrive to search his residence, Mr. Skaggs did not disclose either the existence of the hard drive or its location. Following his arrest, he enlisted his son, Tyler, to confirm the location of the stashed hard drive but to leave it there in the ceiling unless and until Tyler moved from that location.

Mr. Skagg's testimony that he believed the hard drive contained only legal content and that his sole reason for concealing it was to preserve a record of his legitimate "digital life" and to protect it from being seized and indefinitely held or potentially misplaced by law enforcement during their investigation was not believable in the face of the overwhelming evidence establishing that child pornography formed a significant part of Mr. Skaggs's "digital life," that he did in fact know the hard drive contained child pornography, and that he took elaborate efforts to preserve and conceal that illegal content from law enforcement. This evidence is admissible, probative, and highly persuasive—beyond a reasonable doubt—in establishing that Mr. Skaggs's intent in hiding the Seagate hard drive was to impede, obstruct, or influence the FBI's investigation.

### C. The Matter Was Within the Jurisdiction of the FBI Which Is an Agency or Department of the United States

The Seagate hard drive contained child pornography which was relevant to the investigation into Mr. Skaggs's illegal activities underway by the FBI at the time he backed up the hard drive. The FBI clearly is an agency or department of the United States. Accordingly, we hold that the third and final element of Count 12 has been proved by the government's evidence beyond a reasonable doubt.

## Conclusion

Based on the foregoing Findings of Fact and Conclusions of Law, the Defendant, Charles Skaggs, Jr., is adjudged <u>GUILTY</u> as charged in Counts 1 through 12 of the Superseding Indictment.


Date: __8/22/2019__

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana




Distribution:

CHARLES SKAGGS, JR.
HCDC
P.O. Box 979
Henderson, KY 42419

Gwendolyn M. Beitz
INDIANA FEDERAL COMMUNITY DEFENDERS
gwendolyn_beitz@fd.org

Joseph Martin Cleary
INDIANA FEDERAL COMMUNITY DEFENDERS
joe_cleary@fd.org

Steven D. DeBrota
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
steve.debrota@usdoj.gov

MaryAnn Totino Mindrum
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
maryann.mindrum@usdoj.gov

Kyle M. Sawa
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
kyle.sawa@usdoj.gov