UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CHARLES SKAGGS, JR., ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | No. 1:24-cv-00157-SEB-CSW |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

**ORDER GRANTING MOTION TO DISMISS AND
DIRECTING ENTRY OF FINAL JUDGMENT**

In August 2019, following a bench trial, Charles Skaggs was found guilty of twelve counts, convicting him of sexually exploiting a child, possessing child pornography, and concealing evidence. Crim. dkt.[1] 127. He is currently serving a life sentence in federal prison.

Pursuant to 28 U.S.C. § 2255, Mr. Skaggs seeks relief from his convictions. The government has moved to dismiss his petition as untimely. For the following reasons, we find that Mr. Skaggs's § 2255 petition is in fact untimely, and that he is not entitled to equitable tolling. Therefore, the Court grants the government's motion to dismiss and enters final judgment in favor of the government.

**I. Facts**

Final judgment on Mr. Skaggs's conviction and sentence was entered on February 10, 2020. Crim. dkt. 149. He appealed his conviction and sentence, arguing that this Court erred by denying a motion to suppress evidence and by applying a sentencing enhancement. *United States v. Skaggs*,

---

[1] *United States v. Skaggs*, No. 1:17-cr-00168-SEB-MJD.

1

25 F.4th 494 (7th Cir. 2022). The Seventh Circuit affirmed both Mr. Skaggs's conviction and sentence.

Mr. Skaggs petitioned the Supreme Court for a Writ of Certiorari challenging the ruling denying his suppression motion and raising for the first time a claim that the images underlying Counts 1–9 did not depict "sexually explicit conduct", as prohibited by 18 U.S.C. § 2251(a). *See Skaggs v. United States*, No. 22-6053 (Nov. 4, 2022). The Supreme Court denied the Cert petition on January 9, 2023. *Id.*, 143 S. Ct. 604 (2023).

Mr. Skaggs's § 2255 motion was docketed here on January 22, 2024, having arrived at the court from the U.S. Penitentiary at Tucson by way of certified mail. Dkts. 1, 1-3. Postal Service records indicate that his motion was received at the regional postal facility in Phoenix on January 18, 2024, after which it was forwarded on to Indianapolis. Dkt. 15-6.

Mr. Skaggs's motion included a "Certificate of Inmate Filing" declaring under penalties of perjury that he had placed the motion "into the possession of the institution's legal mail personnel" on January 8, 2024. Dkt. 1-1. However, an outgoing mail log maintained by the prison's mailroom records that Mr. Skaggs's motion (identified by its certified mail receipt number) had been placed in the prison's outgoing mail on January 17, 2024—nine days after Mr. Skaggs declared in his certificate that he had presented it for mailing. Dkt. 15-2 (mail log); dkt. 15-4 at ¶ 14 (declaration of mailroom supervisor Laura Ybarra); Dkt. 15-5 at ¶ 15 (declaration of mailroom employee Patricio Encinas).

Mailroom Supervisor Ybarra attests that outgoing mail from the prison "is ordinarily processed out and transferred to the United States Postal Service within 24 hours" after it is received from an inmate, "excluding weekends and holidays." Dkt. 15-4 at ¶ 10. She further attests that, during her time as mailroom supervisor, she has never known or heard of "anything like a

2

nine-day delay between a prisoner delivering mail to an officer and that mail leaving the prison." *Id.* at ¶ 12.

The Tucson Penitentiary was placed on lockdown status on January 1, 2024. Dkt. 17 at 2. Mr. Skaggs maintains that the lockdown meant he "suddenly had ample time to prepare" a § 2255 motion. *Id.* Thus, he prepared his petition on January 4, of which he obtained a copy on January 7, and prepared a mailing envelope on January 8. Dkt. 17-1 at 2, ¶¶ 2–4.

Mr. Skaggs attests that on the afternoon of January 8, he slid the envelope containing his petition under his cell door to deliver it to Case Manager Tate while Tate "was making his rounds." *Id.* at 3, ¶ 5. Mr. Skaggs maintains that he requested that Case Manager Tate take the envelope to the mailroom for mailing, but that Case Manager Tate "refused to do so and slid the envelope back to" him under his cell door. *Id.*

Mr. Skaggs further attests that given Tate's refusal, he gave the envelope to Counselor Byler on the afternoon of January 9, and Byler agreed to deliver it to the mailroom. *Id.* at 3, ¶ 6. Mr. Skaggs states that he does not know what happened to his mailing between January 9 and 17. *Id.* at 3, ¶ 7.

Mr. Skaggs has proffered corroborating affidavits from a cellmate and another inmate, both of whom support Mr. Skaggs's testimony that Case Manager Tate refused to accept his mail on January 8, but that Counselor Byler accepted it on January 9. Dkt. 17-1 at 4–6.

In an effort to rebut Mr. Skaggs's assertion, the Government has adduced evidence in the form of information contained in employee timecards that shows that Case Manager Tate did not work at the prison January 8 (the date when he allegedly refused Mr. Skaggs's mail) and that Counselor Byler did not work on January 9 (the date when he allegedly accepted Mr. Skaggs's mail). Dkts. 19-1 (Tate's timecard), 19-2 (Byler's timecard), 23-2 (Tate declaration), 23-3 (Byler

3

declaration). These exhibits further reflect that Case Manager Tate did work at the prison on Saturday, January 6, but did not work again until Tuesday, January 9. Dkt. 19-1 at 1–3. (Sunday and Monday, January 7 and 8, were reportedly his regular days off. *Id.*) Counselor Byler worked on Friday, January 5, but not again until Thursday, January 11. Dkt. 19-2. (Counselor Byler had requested annual leave for January 9 and 10, which had been approved. *Id.* at 3.) Case Manager Tate has sworn in his affidavit under penalties of perjury that he "never refused to deliver mail given to" him "by an inmate, including Mr. Skaggs, to the mailroom or to an outgoing mailbox. Without exception," he has said, he delivers "mail promptly and appropriately, within one business day of receipt, to" the "mail room or to an outgoing mailbox." Dkt. 23-2 at ¶ 5.

## II. Analysis: Timeliness of § 2255 Motion

The Antiterrorism and Effective Death Penalty Act of 1996 establishes a one-year statute of limitations for the filing of § 2255 motions. 28 U.S.C. § 2255(f). The one-year limitations period begins to run with the latest of four triggering events. *Id.* Here, the applicable trigger was the finalization of Mr. Skaggs' judgment of conviction on January 9, 2023. 28 U.S.C.C. § 2255(f)(1).

A judgment of conviction becomes final for purposes of § 2255(f)(1) "when the Supreme Court 'affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires.'" *Robinson v. United States*, 416 F.3d 645, 647 (7th Cir. 2005) (quoting *Clay v. United States*, 537 U.S. 522, 527 (2003)). Mr. Skaggs's conviction, which became final on January 9, 2023, when the Supreme Court denied Mr. Skaggs's Cert petition, started the running of the limitations period, which expired one year later on January 9, 2024.

The Court did not receive Mr. Skaggs's § 2255 motion until January 22, 2024, nearly two weeks past the one-year deadline. The timeliness of his petition can be established only if the

prison mailbox rule applies here, as provided for under the AEDPA. *See generally Ray v. Clements*, 700 F.3d 993 (7th Cir. 2012). Under the mailbox rule, a pro se prisoner is deemed to have filed a document with the court "at the moment the prisoner delivers it to a prisoner official for mailing to the court." *Id.* at 1002.

The government does not dispute that if Case manager Tate refused to accept the document on January 8 or if Counselor Byler accepted it on January 9, under the mailbox rule, Mr. Skaggs's § 2255 motion would have been timely. However, the government maintains that neither of these events actually occurred: Mr. Tate did not refuse Mr. Skaggs's January 8th request to mail the document, and that Mr. Byler did not receive the document on January 9th, so the mailbox rule does not apply here.

"It is well-settled that AEDPA's statute of limitations is a nonjurisdictional affirmative defense," and the government, as "the party raising an affirmative defense[,] bears the burden of proof." *Ray*, 700 F.3d at 1006. Further, a burden-shifting analytical framework applies in resolving the issue. *Id.* at 1008.

When the government challenges the timeliness of a § 2255 petition, "the petitioner must come forward with some evidence to support his claim that" he timely submitted the motion and is invoking the mailbox rule in determining its arrival date for docketing purposes. *Id.* at 1008. "[T]he petitioner's requisite evidentiary showing should be exacting. The prisoner's sworn declaration should identify the who, what, when, where, how, and why of his alleged delivery to a prison official." *Id.* at 1011.

"After the petitioner makes this evidentiary showing, the burden shifts to the government to prove that the limitations period has run." *Id.* at 1008. "[T]he state is not required to prove to a

5

statistical certainty that the petitioner did not hand his document to a prison official on the date that he claims to have done so." *Id.* at 1010.

The government has invoked the statute of limitations defense based on the documentary evidence it submitted and the officers' sworn statements, which establish that the mailroom did not place Mr. Skaggs's mailing into the outgoing mail before January 17, which was already eight days past the statutory deadline. The government further proffers that mail at the prison typically is sent out within one business day of its submission by the prisoner to the prison officials who are responsible for such mailings, and that a delay in mailing of eight or nine days is unprecedented.

Mr. Skaggs has satisfied his burden under *Ray,* having testified that he submitted his mailing to a prison official on or before the January 9 deadline. He supports his claim with specific details and has also submitted corroborative testimony via the sworn declarations by two other inmates. This satisfies the evidentiary requirement that he show "the who, what, when, where, how, and why of his alleged delivery." *Id.* at 1011.

In response to Mr. Skagg's submissions, the government has countered with rebuttal evidence challenging Mr. Skaggs's argument that he presented his mailing to Case Manager Tate on January 8, and, after its rejection, he presented it again to Counselor Byler on January 9. The Government has adduced the timecards and accompanying declarations by the two involved prison officials that contradict Mr. Skaggs's assertions by establishing that neither of them was even at work at the prison on those dates. The government contends that because they were not working on those dates, Mr. Skaggs could not have presented his mailing to them as he has claimed.

Mr. Skaggs speculates in response that it is possible that Case Manager Tate and Counselor Byler may actually have been at the prison on January 8 and 9, even though they were not clocked in. Dkt. 21 at 2–3. But such a possibility is countered by their sworn declarations

6

attesting to the fact that they were not at the facility on those specific dates. Dkt. 23-2 at ¶ 6; dkt. 23-3 at ¶ 5. In fact, Mr. Skaggs's own declaration undermines his theory when he states that Case Manager Tate refused his mail while "making his rounds" on January 8, *see* dkt. 17-1 at 3, ¶ 5, which "making his rounds" assertion is squarely at odds with Tate's testimony that he was off duty that day.

Mr. Skaggs concedes that his memory may be off, but if so, by only one day, thus justifying his request that the Court give him the benefit of the doubt by finding in favor of the January 9th date as the handoff date to Officer Tate. *See* dkt. 21 at 1–3. We are unable to do so for the following reasons:

First, Case Manager Tate's timecard corroborates his sworn statement that he did not work on January 8, the date according to Mr. Skaggs when Tate refused to accept his outgoing mail. This evidence is strengthened by Mr. Tate's testimony is that he has never refused to accept mail from Mr. Tate, nor has he ever done so from any other prisoner.

Second, the timecards do not support Mr. Skaggs's "off by one day" theory. His initial theory was that Case Manager Tate rejected his mail on January 8 and Counselor Byler accepted it on January 9. Mr. Skaggs's alternative theory is that maybe Case Manager Tate rejected his mail on January 9 and Counselor Byler accepted it on January 10. Because the documentary evidence (i.e., the timecards) show that Counselor Byler was on vacation from his work duties on January 9 *and* 10, he clearly could not have accepted Mr. Skaggs's mail on the alternative date either. Mr. Skaggs's fallback argument thus gains him nothing since it lacks any factual basis.

Mr. Skaggs's request for "a hearing or deposition of the government affiants" is not well-taken for the reason that such a faceoff would be fruitless. Dkt. 25 at 2. This is not a case in which two witnesses are giving competing accounts which can only resolved on the basis of credibility

7

determinations. Mr. Skaggs's time estimates lose force in the face of the convincing force of the evidentiary documents, whose authenticity has not been challenged. A hearing therefore would not assist the Court in resolving any material factual dispute.

Mr. Skaggs maintains the prison's security video, if ordered produced, would capture Case Manager Tate's refusal to accept his mail on January 8 and Counselor Byler's acceptance of it on January 9. Dkt. 17 at 4. However, counsel for the government has reported that any such video record depicting events on January 8 and 9 has not been preserved by the prison. Dkt. 23 at 2. The prison cannot be faulted for its failure to retain such a security video from as long ago as early January 2024, especially given Mr. Skaggs's delay of more than seven months in requesting access to it.

Finally, Mr. Skaggs contends that his case is more accurately governed by another section of the statute the one cited by the government; the operative language appears in § 2255(f)(2), he says, rather than § 2255(f)(1). (Emphasis supplied.) Under § 2255(f)(2), the limitations period for filing petitions begins to run on "the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action." Mr. Skaggs maintains that the prison staff's failure to collect legal mail according to a regular schedule was a government-created impediment that existed in January 2024 and continued throughout the period of additional lockdowns until the fall of 2024. Dkt. 25-1 at 5.

We do not address the issue of whether systemic deficiencies existed in the processing of mail collection or, if so, whether they constituted an impediment to filing petitions with the Court within the meaning of § 2255(f)(2), for the reason that Mr. Skaggs has offered no evidence to support such a theory. Based on his own framing of his claims, his mail was rejected by one

prison staff member and a day later accepted by another prison staff member. Those facts do not reveal in any way that the prison's mail collection system was deficient or created an impediment to his rights.

Mr. Skaggs does not prevail on his arguments for the simple reason that the government has demonstrated that his attempt to explain away his dilatoriness is unworthy of belief. Accordingly, the government has successfully carried its burden to show that Mr. Skaggs failed to timely file his § 2255 motion and that it must be dismissed.

### III. Equitable Tolling

Mr. Skaggs's failure to timely file his motion may, in any event, pursuant the AEDPA, be "subject to equitable tolling." *Holland v. Florida*, 560 U.S. 631, 649 (2010). We address this issue next. "Equitable tolling is 'rare' and 'reserved for extraordinary circumstances far beyond the litigant's control that prevented timely filing.'" *Boulb v. United States*, 818 F.3d 334, 340 (7th Cir. 2016) (quoting *Socha v. Boughton*, 763 F.3d 674, 684 (7th Cir.2014)).

As the party seeking the benefit of equitable tolling, Mr. Skaggs bears the burden of demonstrating that equitable relief is available and that it applies here. *Ray*, 700 F.3d at 1007 ("It is certainly true that the petitioner bears the burden of proving 'equitable tolling.'"). "To qualify for equitable tolling then, a petitioner must show: '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.'" *Boulb*, 818 F.3d at 339–40 (quoting *Holland*, 560 U.S. at 649).

Mr. Skaggs's own statements make clear that he did not pursue his rights with the requisite diligence to qualify him for equitable tolling. He must be able to show that he made a "reasonable effort *throughout the limitations period*." *Mayberry v. Dittmann*, 904 F.3d 525, 531 (7th Cir. 2018) (emphasis added). Mr. Skaggs has stated that he did not begin work on his § 2255 motion until

9

January 1, 2024, when the prison lockdown "suddenly gave him ample time to prepare" it. Dkt. 17 at 2. Perhaps Mr. Skaggs worked diligently from that point on to complete and mail his motion. But prior to that time, he surely had ample time to gather evidence and research materials and begin drafting his petition, beginning immediately after the Supreme Court denied his Cert petition in January 2023, and well before the January 2024 lockdown. *See* dkt.21 at 5.

Mr. Skaggs has cited no extraordinary circumstance that prevented him from filing his materials on time. For good reason, he does not maintain for example that the lockdown, rarely an extraordinary circumstance in prison settings, somehow deprived him of access to legal papers and the mailroom and thus delayed his filing. (*Id.* at 5–6. Dkt. 21 at 4) The lockdown was not in effect until the week prior to his filing deadline. He doesn't explain why he could not have attended to this matter during the preceding fifty-one weeks. By waiting until the eleventh hour, the record reflects Mr. Skaggs simply ran out of time.

When dilatoriness on the part of a § 2255 petition movant renders his petition too late to be considered, in the absence of a showing of due diligence or some extraordinary circumstance, equitable tolling may still be possible pursuant to the "miscarriage of justice exception." However, this "last ditch" option is available only if a petitioner can "'show that it is more likely than not that no reasonable juror would have convicted him in the light of . . . new evidence.'" *McQuiggin v. Perkins*, 569 U.S. 383, 399 (2013) (quoting *Schulp v. Delo*, 513 U.S. 298, 327 (1995)). Mr. Skaggs does not invoke this statutory exception in his responsive briefing to the motion to dismiss, and no part of his § 2255 motion relies on "newly discovered" evidence. Mr. Skaggs's underlying claim in his § 2255 motion is that his indictment was defective, that the Court misinterpreted the statutes under which he was charged, that his property was wrongly forfeited, that the Court committed sentencing errors, that he was deprived of his rights to confront witnesses and to the effective

assistance from counsel, and that the prosecutors and investigators engaged in official misconduct. Dkt. 7. Because no "newly discovered" evidence has been cited as the basis for any of these claims, equitable tolling based on a miscarriage of justice is not available to Mr. Skaggs to rescue his untimely petition.

## IV. Conclusion

The government's motion to dismiss the § 2255 petition for having been untimely filed, dkt. [14], is **granted** and **dismissal shall be entered with prejudice.** Final judgment shall issue. The clerk is directed to docket a copy of this order in the criminal case, No. 1:17-cr-00168-SEB-MJD-1 and to **terminate** the pending § 2255 motion (dkt. [213]) in the criminal case.

## V. Certificate of Appealability

A habeas petitioner does not have an absolute right to appeal a district court's denial of his habeas petition; rather, he must first request and be granted a certificate of appealability. *See Miller–El v. Cockrell*, 537 U.S. 322, 335 (2003); *Peterson v. Douma*, 751 F.3d 524, 528 (7th Cir. 2014). Pursuant to Federal Rule of Appellate Procedure 22(b), Rule 11(a) of the Rules Governing § 2255 proceedings, and 28 U.S.C. § 2253(c), the Court hereby finds that Mr. Skaggs has failed to show that reasonable jurists would find "it debatable whether the petition states a valid claim of the denial of a constitutional right" and "debatable whether [this court] was correct in its procedural ruling." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000). The Court therefore **denies** the issuance of a certificate of appealability.

**IT IS SO ORDERED.**

Date: 1/30/2025

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

11

Distribution:

CHARLES SKAGGS, JR.
15652-028
TUCSON – USP
TUCSON U.S. PENITENTIARY
Inmate Mail/Parcels
P.O. BOX 24550
TUCSON, AZ 85734

Colin Clark
United States Attorney's Office, Southern District of I
Colin.Clark@usdoj.gov